[No. 1541.]

THE NATIONAL BANK OF COMMERCE v. GRAHAM, ASSIGNEE.

|10 373|
|16 500|

1. PRACTICE—EVIDENCE.
Where there is no material conflict in the evidence the rule that the appellate court is bound by the findings of fact by the trial court, or by a jury, does not apply.
2. PROMISSORY NOTE—LIABILITY OF SIGNERS.
Parties signing a note before the final delivery and acceptance by the payee are liable, although the note had been executed and handed to the payee before the signatures were added.

*Appeal from the District Court of Arapahoe County.*

Mr. W. W. ANDERSON and Mr. ELIJAH ROBINSON, for appellant.

Messrs. HARTZELL & STEELE, for appellee.

BISSELL, J., delivered the opinion of the court.

The National Bank of Commerce of Kansas City appeals from a judgment which was entered against it and in favor of Graham as assignee of John J. Riethmann and J. J. Riethmann & Co., which determines that the bank is not entitled to participate in the distribution of the estate of the insolvent debtors. The claim grew out of transactions between the German National Bank of which Riethmann was president, and the National Bank of Commerce. Prior to June, 1894, the Bank of Commerce was the holder of a note for $100,000, which was made by a Mr. Wright to the German National Bank, by that bank indorsed and rediscounted with the Bank of Commerce. The note fell due and the German National wanted to renew it. The renewal was refused and negotiations were entered into between the two banks to arrange, if possible, some basis on which an extension of time could be had. The German National sent a representative to Kansas City who went before the discount committee of the Bank of Commerce, but nothing directly resulted from this effort save the coming of Dr. Wood, the president of the Bank of Commerce, to Denver, to see what could be done about the payment or extension of the paper. Dr. Wood remained here some days and had much negotiation with Riethmann as the president of the German National which culminated in the giving of the paper involved. This matter was carried on between Riethmann as president of the one bank, and Dr. Wood as president of the other, and finally the German National gave its own note, which was signed by John J. Riethmann and J. J. Riethmann & Co.; delivered sundry commercial paper which was held by the German National as part of its assets as collateral, and paid $25,000, on the original debt. There is no dispute about the giving of the note, the signature by Riethmann and Riethmann & Co., the delivery of the collaterals, and the payment of the $25,000.

The whole matter turns on the circumstances attending the execution and delivery of the paper. By one side it is claimed that the signatures were affixed to the paper before its delivery, and by the other, that in reality the note was accepted and the signatures of Riethmann and Riethmann & Co. were obtained thereafter. We must therefore state with some little particularity the case as we see it. Dr. Wood was here for two or three days and talked alone with Riethmann in regard to the proposed extension, and negotiated with him concerning its terms and the conditions on which the extension could be had. The German National through its president offered sundry pieces of their commercial paper as security, many of which were rejected, and some of which were believed to be satisfactory. In point of fact, the condition of the German National was such that it was forced to assent to any conditions which Dr. Wood might impose because if the note had not been paid it would apparently have resulted in closing the institution which was in a failing condition. When the paper which Riethmann selected was submitted to Dr. Wood and found unsatisfactory the German National turned over their book of notes to Dr. Wood, who himself selected from it the collateral which he was willing to accept. When this matter was settled Dr. Wood prepared a memorandum of the note and of the collateral, and the cashier was called in and instructed to make out a note in the prescribed form and indorse the collateral on the back according to the list furnished. This he did. When the note was filled out and signed by him as cashier on behalf of the German National it was brought into the president's office where Riethmann and Dr. Wood were. Taking Riethmann's, Wood's and Kunsemiller's stories together, it would seem that the collaterals were in the president's office on the desk when the note was brought in. It may have been handed to Dr. Wood, or laid on the table. This seems a little uncertain, though as we look at it, it makes very little difference, because even though the note had been handed to Dr. Wood there is nothing to show that

there was at that time a completed arrangement by which the receipt of the paper by him would have amounted to a termination of the negotiations and the completion of a binding contract. According to Dr. Wood's story, and it is assented to by Mr. Riethmann, the collateral was not delivered at the time the note was handed to him, nor were the delivery of the two things concurrent, but as Mr. Riethmann put it "the collateral was there and Dr. Wood was present to receive it," but the note and the collateral were not at that immediate instant delivered to Dr. Wood and by him accepted, but after these papers were together on the desk Dr. Wood then insisted that the note should be signed by Mr. Riethmann on behalf of himself and his firm, or he would not accept it. After some little delay Mr. Riethmann signed the note as the doctor requested, and it, together with the collateral, was turned over to him. It was further agreed that a remittance should be made to Kansas City, the proper entries made on the books of the Bank of Commerce which would show the payment of the one note and the giving of another for $75,000, which would amount to an extension of the paper on the terms agreed.

This is practically all there is of this case. It is conceded by the appellees that if the note was executed by Riethmann for himself and his firm prior to the acceptance of the paper by the Bank of Commerce, there was a sufficient consideration for the promise, and that both Riethmann and Riethmann & Co. would be liable on the paper. They likewise do not question the position that where the party holds collateral for the payment of paper he is entitled to prove his claim against the estate, leaving the further question open as to the conditions on which he is to share in the dividends and the limitations which the law may affix to his right by reason either of the value of the collateral or the failure to surrender it, or because of subsequent collections. With these questions we have no concern. The only matter to be considered is, whether, under the circumstances attending the execution of this paper, it became and was the note

of Riethmann and Riethmann & Co., by which they were
bound and for which they were responsible.  Since all other
questions are removed from the case and we are confronted
with this naked inquiry, we have only to determine whether,
under the circumstances attending the execution of this note,
it became a valid obligation in the hands of the Bank of Com-
merce.  We do not believe that we are confronted or embar-
rassed by the rule so often declared that where a judgment
is entered on conflicting testimony, whether as the result of
the verdict of the jury, or the finding of the court, we must
accept either conclusion as binding on our judgment.  This
is not that sort of a case.  There is no conflict in the testi-
mony.  The parties do not disagree in regard to the main
essentials of the transaction.  The only differences, which
are slight, proceed from the way in which the case is stated
by the witnesses.  We do not discover any attempt or desire
on the part of any of them to misstate, magnify, or diminish
the facts as they recollect them, but, as must be the fact in
such a case, there will be minor discrepancies resulting from
a difference in recollection.  However the evidence may be
looked at, we are not able to see that there is any witness
who testifies to facts which establish a completed transac-
tion as the result of the delivery of the note to Dr. Wood
by the cashier after he had prepared it.  The query by which
the matter may very easily be determined is, could the Bank
of Commerce have refused to proceed further with the ne-
gotiation and immediately brought suit against the German
National on the original note.  This query must be answered
in the affirmative, because there had been no distinct and spe-
cific agreement on the part of the National Bank of Commerce
through its representative to accept the note and collateral,
nor were both turned over to him by the president, who was
the sole party who acted for the German National, so that it
can be legally said there was an end of the matter, and the
Bank of Commerce no longer had the right to retire from
the trade and refuse to carry it to its completion.  If the
German National had failed to pay the $25,000, even though

the note and collateral had been accepted by the Bank of Commerce, that bank would have had a right to return the note and collateral and commence suit on the original paper.

Possibly this is of little weight since that payment was to have been made in Kansas City, but it shows that there were several things to be done by the German National. A satisfactory note was to be given, collateral was to be turned over, and a payment was to be made. Before an acceptance of the note and collateral there was no completed agreement which bound the parties on which the German National could rely as a defense to a suit. We are wholly unable to separate the parts and parcels of this transaction and hold that because the note was handed to Dr. Wood by the cashier and because the collateral lay on the table these things alone can be taken to bind him and fix the obligations of the parties. Manifestly, it would be quite impossible to take any specific circumstance in a transaction of this sort and say that on its happening the rights of the parties were concluded unless the act was the final consummation of the whole transaction. We must look at it as an entirety, see what was being done, what the parties were trying to accomplish, and only on the conclusion of their treaty can it be held that they are concluded. The German National was so entirely at the mercy of the Bank of Commerce that it can very readily be believed the bank and its officers were ready to accede to any demand which might be made in order to secure the extension of the paper. Since the case wholly turns on this question and we are so fully and firmly of the conviction that the note was signed by Riethmann and Riethmann & Co., prior to its delivery and acceptance we must hold as a matter of law that both Mr. Riethmann and his firm are liable on the note, and the holders are entitled to such remedy respecting it as this situation may afford them.

This disposes of the appeal, and the judgment must necessarily be reversed.

*Reversed.*